DONALDSON, Judge.
C.M. and J.M. (“the paternal grandparents”) are the paternal grandparents of KM. (“the child”), and KB. (“the maternal grandmother”) is the maternal grandmother of the child. The paternal grandparents appeal from a single judgment of the Baldwin Juvenile Court (“the juvenile court”) entered in two separate cases— case no. JU-11-651.04 (“the .04 case”) and case no. JU-11-651.06 (“the .06 case”); that judgment, which was entered on September 14, 2015, granted the maternal grandmother visitation with the child. Because the September 14, 2015, judgment has no operative effect in either the .04 case or the .06 case, previously entered orders dismissing the petition in each of those cases are the final orders. Consequently, the paternal grandparents’ appeals are untimely, and we dismiss the appeals.

Facts and Procedural History

The child’s father was killed by the child’s mother, B.M. (“the mother”). The child was less than a year old at the time. After the mother was charged with murder, the paternal grandparents and the maternal grandmother filed separate petitions seeking temporary custody of the child. The juvenile court granted the paternal grandparents temporary custody of the child and granted the maternal grandmother visitation. The mother was later found guilty of manslaughter after a jury trial in the Baldwin Circuit Court. The paternal grandparents filed a petition to terminate the mother’s parental rights to the child and to terminate the maternal grandmother’s visitation. That petition commenced case no. JU-11-651.03 (“the .03 case”).
The paternal grandparents sent letters to the mother and the maternal grandmother expressing their intent to move with the child to Florida. The maternal grandmother initiated a contempt action against the paternal grandparents, which was assigned case no. JU-11-651.05 (“the .05 case”), that included an objection to the relocation request.[1] After a hearing, the juvenile court entered an order on February 26, 2014, denying the paternal grandparents’ request to relocate to Florida. The order also granted the maternal grandmother two hours of unsupervised visitation on Tuesdays and Thursdays, during which the mother was allowed to have telephone visitation with the child.
After conducting hearings on the matter, the juvenile court entered a judgment in the .03 case terminating the mother’s parental rights to the child. The mother appealed, and we affirmed that judgment without an opinion. B.M. v. C.M., (No. 2140298, May 29, 2015), — So.3d - (Ala.Civ.App.2015)(table).

The M Case

The child’s maternal grandfather, N.R. (“the maternal grandfather”), commenced the .04 case by filing a petition seeking visitation with the child on August 26, 2013, after the paternal grandparents had filed the petition to terminate the mother’s parental rights in the .03 case. The maternal grandfather filed a motion to consolidate the .04 ease with both the .03 case and the .05 case, which were both pending at that time. There is no order ruling on the motion to consolidate; however, the juvenile court expressly stated in a later hearing that the cases had not been consolidated.
The mother filed the same motion for contempt in the .03 case, the .04 case, and *36 the .05 case. She alleged that the paternal grandparents had not allowed her visitation with the child. The paternal grandparents filed a motion to deny the mother’s contempt motion in the .04 case, asserting, among other things, that the mother and the maternal grandmother had violated the then existing order regarding visitation.
The mother later filed a motion to allow her to exercise visitation with the child through electronic means, and she filed another motion for contempt against the paternal grandparents. Both motions were filed in the .03 case, the .04 case, and the .05 case. The paternal grandparents filed a motion to deny the mother visitation via electronic means and a motion for contempt against the mother and the maternal grandmother, alleging that the mother and the maternal grandmother had been exercising visitation through electronic means without the court’s permission.
After a hearing was held on the petition to terminate the mother’s parental rights in the .03 case, the maternal grandmother filed a motion for contempt in the .03 case, the .04 case, and the .05 case. She alleged that the paternal grandparents had denied her visitation with the child. In addition to sanctions against the paternal grandparents, the maternal grandmother sought resumption of her visitation with the child. The paternal grandparents filed a response alleging that the maternal grandmother’s visitation with the child had resumed. The maternal grandmother never sought to intervene in the .04 case and was not a party in that case.
On September 10, 2015, the juvenile court entered an order in the .04 case stating that testimony had concluded and that the maternal grandfather’s petition initiating the .04 case was dismissed for want of prosecution. The order also stated: “Visitation issues taken under submission.”

The .06 Case

On March 23, 2015, the maternal grandmother filed a petition objecting to the proposed relocation of the paternal grandparents with the child and seeking to modify custody, initiating the .06 case. The maternal grandmother sought an order disallowing an anticipated relocation of the paternal grandparents with the child to Nashville, Tennessee. In the alternative, she sought sole legal and physical custody of the child, asserting that it was not in the child’s best interest to relocate to Nashville and that, if the paternal grandparents relocated, granting her sole legal and physical custody of the child was in the child’s best interest. On April 1, 2015, the paternal grandparents filed a motion to dismiss or, in the alternative, for a judgment on the pleadings. The paternal grandparents argued that the maternal grandmother’s petition was without merit and due to be dismissed pursuant to § 30-3 — 169.1(b), Ala.Code 1975, which states: “A non-parent entitled to visitation with a child may commence a proceeding to obtain a revised schedule of visitation, but may not object to the proposed change of principal residence of a child or seek a temporary or permanent order to prevent the change.”
On May 1, 2015, the juvenile court entered an order in the .06 case dismissing the maternal grandmother’s petition. The order allowed the paternal grandparents to relocate to Nashville with the child. On May 13, 2015, the maternal grandmother filed a motion to alter, amend, or vacate or, in the alternative, for a new trial, which the juvenile court denied on May 14, 2015.

The September H, 2015, Judgment

On September 10, 2015, the juvenile court rendered a judgment in case no. JU-11-651, without specifying any case *37 designators (i.e., “.01,” “.02,” “.03,” etc.). In that judgment, the juvenile court stated that it had conducted a hearing on September 10, 2015, “regarding the Paternal Grandparents/Custodian’s Petition regarding Visitation by the Maternal Grandmother.” On September 14, 2015, the judgment was entered in both the .04 case and the .06 case. In the judgment, the juvenile court ordered for the maternal grandmother to have telephone visitation with the child on Tuesdays at 7:00 p.m. and in-person visitation with the child one weekend a month. The judgment prohibited the inclusion of the mother in the visitation periods provided in the judgment. The judgment also prohibited any references to the mother by the parties until the child’s counselor determined such discussion to be appropriate, and any discussions regarding the mother thereafter were to follow the counselor’s guidelines. The judgment left all other aspects of prior orders intact and expressly denied any other relief.
On September 21, 2015,' the paternal grandparents filed in both the .04 case and the .06 case a motion to alter, amend, or vacate the September 14, 2015, judgment. The paternal grandparents argued that granting the maternal grandmother visitation with the child was against the weight of the evidence. In their argument, they asserted that the trial of the ,03 case had been bifurcated to separately address the termination of the mother’s parental rights to the child and the maternal grandmother’s visitation with the child. On September 25, 2015, the maternal grandmother filed a response in both the .04 case and the .06 case, asserting that allowing her visitation was in the best interests of the child. On September 28, 2015, the maternal grandmother filed in both the .05 case and the .06 case a motion to alter, amend, or vacate the September 14, 2015, judgment or, in the alternative, for a new trial. She argued that the juvenile court’s failure to grant her extended visitations during summers and holidays was against the weight of the evidence. On Octobér 14, 2015, the juvenile court entered orders denying the paternal grandparents’ post-judgment motion in the .04 and .06 cases and the maternal grandmother’s post-judgment motion in the .06 case.
On October 20, 2015, the paternal grandparents filed a notice of appeal in both the .04 case and the .06 case. This court consolidated the appeals of the .04 case and the .06 case ex mero motu.

Discussion

Before addressing any issues the paternal grandparents raise on appeal, we must first address whether this court has jurisdiction over these appeals. See Nunn v. Baker, 518 So.2d 711, 712 (Ala.1987) (“[Jjurisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu.”). “Unless otherwise provided by law, appeals lie only, from final orders or judgments.” Wolf v. Smith, 414 So.2d 129, 130 (Ala.Civ.App.1982) (citing Cates v. Bush, 293 Ala. 535, 307 So.2d 6 (1975)).
The paternal grandparents are attempting to appeal from the September 14, 2015, judgment entered in the .04 case and the .06 case, and their arguments on appeal pertain only to the juvenile court’s granting of visitation to the maternal grandmother in that judgment. However, the September 14, 2015, judgment does not address the relief requested in the petitions initiating the .04 case and the .06 case. Furthermore, those cases were never consolidated with a case in which the maternal grandmother’s claim seeking visitation rights was properly adjudicated..
The .04 case was initiated by the filing of the maternal grandfather’s petition. The maternal grandmother never filed a motion to intervene in the ,04 case and, as a *38 result, was not a party in that case. Although the order entered on September 10, 2015, in the .04 case states: “Visitation issues taken under submission,” the order expressly dismissed the maternal grandfather’s petition seeking visitation rights for himself. That order, therefore, disposed of all the issues raised in the .04 case. The judgment entered on September 14, 2015, that granted the maternal grandmother visitation rights did not address the relief sought in the maternal grandfather’s petition, and that judgment therefore had no operative effect in the .04 case. Consequently, the September 10, 2015, order dismissing the maternal grandfather’s petition was the final order in the .04 case. See Wesley v. Brandon, 419 So.2d 257, 258 (Ala.Civ.App.1982) (quoting Sexton v. Sexton, 280 Ala. 479, 481, 195 So.2d 531, 533 (1967), for the proposition that determining whether an order is a final order may be phrased as whether there is “‘something more for the [trial] court to do’”).
“An appeal from a juvenile court’s judgment must be filed within 14 days of the entry of that judgment or within 14 days of the denial of a timely postjudgment motion filed pursuant to Rules 52, 55, or 59, Ala. R. Civ. P.” M.M. v. L.L., 989 So.2d 528, 530 (Ala.Civ.App.2007); see Rule 1(B), Ala. R. Juv. P.; Rule 28(C), Ala. R. Juv. P.; and Rule 4(a)(1), Ala. R.App. P. (stating that, “[i]n appeals from the following orders or judgments, the notice of appeal shall be filed within 14 days (2 weeks) of the date of the entry of the order or judgment appealed from ... (E) any final order or judgment issued by a juvenile court”). A postjudgment motion pursuant to Rule 59, Ala. R. Civ. P., tolls the time for filing an appeal; the time for filing an appeal is computed from the date of an order granting or denying a postjudgment motion. Rule 4(a)(3), Ala. R.App. P. If the juvenile court does not enter such an order within 14 days, the postjudgment motion is deemed denied by operation of law. Rule 1(B), Ala. R. Juv. P.
The final order in the .04 case was entered on September 10, 2015, and the paternal grandparents filed their notice of appeal on October 20, 2015. Because the paternal grandparents did not appeal within 14 days of the entry of the final order, we dismiss the appeal from the .04 case as untimely. Even if we consider the patex--nal grandparents’ postjudgment motion filed on September 21, 2015, as being applicable to the final order in the .04 case, that motion would have been denied by operation of law on October 5, 2015. As a result, the juvenile court would have lacked the jui’isdiction to enter the order denying that motion on October 14, 2015, and the paternal grandparents’ appeal would still be untimely in the .04 case. See, e.g., M.A.J. v. S.B., 99 So.3d 1244, 1246 (Ala.Civ.App.2012) (holding juvenile court’s order on father’s postjudgment motion to be a nullity because the motion had already been denied by the operation of law). Moreover, we note that only the paternal grandparents filed a notice of appeal, and the dismissal of the maternal grandfather’s petition was not an adverse ruling as to them that we can review. Olson v. State, 975 So.2d 357, 359 (Ala.Civ.App.2007) (“Generally, a party may appeal only an adverse ruling.”).
The maternal grandmother’s petition initiating the .06 case was based on an objection to the paternal grandparents’ proposed relocation with the child to Nashville. The May 1, 2015, order entered in the .06 case dismissed the petition, thereby disposing of all the issues raised in the petition. The juvenile court subsequently denied the maternal grandmother’s post-judgment motion addressing the May 1, 2015, order in the .06 case on May 14, 2015. Because the May 1, 2015, order was *39 the final order in the .06 case and because the postjudgment motion addressing that order was denied on May 14, 2015, the juvenile court lacked the jurisdiction in the .06 case to enter the September 14, 2015, judgment or the October 14, 2015, order denying, among other things, the paternal grandparents’ postjudgment motion addressing that judgment. See M.A.J. v. S.B., supra.
The paternal grandparents did not appeal within 14 days of May 14, 2015, when the juvenile court denied the maternal grandmother’s postjudgment motion addressing the final order entered in the .06 case. As a result, we dismiss the paternal grandparents’ appeal from the .06 case as untimely. We note also that the dismissal of the maternal grandmother’s petition in the .06 case was not adverse to the paternal grandparents’ interests. See Olson, supra.
For the foregoing reasons, this court has no jurisdiction to consider the paternal grandparents’ appeals from the .04 case and the .06 case, and, accordingly, we dismiss the appeals.
2150084 — APPEAL DISMISSED.
2150085 — APPEAL DISMISSED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. The filing date of the petition initiating the .05 case is not clear from the record.